No. 46,248

CHARLES A. OGDEN, *Appellee and Cross-Appellant*, v. CONTINENTAL
CASUALTY COMPANY, a Corporation, *Appellant and Cross-Appellee.*

(494 P. 2d 1169)

Opinion filed March 4, 1972.

*Stephen J. Jones,* of Hershberger, Patterson, Jones & Thompson, of Wichita,
argued the cause and *William R. Smith,* of Hershberger, Patterson, Jones &
Thompson, of Wichita, was on the brief for the appellant and cross-appellee.

*Robert L. Bishop,* of Janicke, Herlocker & Bishop, of Winfield, argued the
cause, and was on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

PRAGER, J.: This is an action to recover benefits under a group
insurance policy brought by an employee insured thereunder. The
insurance policy was issued by the appellant Continental Casualty
Company to provide disability insurance coverage to the employees
of Tracor, Inc., of Austin, Texas. Benefits payable under the policy
were set forth in a schedule attached to the certificate of insurance
issued to each individual employee. The master policy was in the
possession of the employer Tracor. Premiums on the policy were
paid one-half by the employer and one-half by the employee.
Participation in the group insurance plan was voluntary.

As an employee of Tracor, Inc., the appellee Charles A. Ogden
was issued a certificate of insurance dated September 1, 1966, to

which was attached a schedule of benefits reciting a monthly sickness indemnity of 50% of the employee's salary subject to a maximum per month of $1000. It is undisputed that appellee Ogden was an employee of Tracor, that he was an insured under the master policy and that a certificate of insurance was issued to him providing disability benefits as set forth heretofore. It is also undisputed that Ogden became disabled and was last employed by Tracor on February 28, 1968. Ogden made a claim under the insurance policy and commencing on May 28, 1968, Continental made monthly payments of 50% of Ogden's salary as of the date of his disability which payments were in the amount of $670 each. Payments were made at this rate through the month of January 1969. At this point the controversy arises.

It is clear from the evidence that the master policy was modified by an endorsement having an effective date of January 1, 1967, by agreement of Continental and the employer Tracor. The insurance contract was amended to reduce the monthly sickness benefits to 50% of a maximum salary of $1000 less any sums paid under workmen's compensation or occupational disease benefits or payments under the Social Security Act. It is clear from the evidence that effective with Ogden's disability he received social security payments in the amount of $337.20 per month. Continental contended that he was entitled to receive only the disability benefits contained in the amended schedule which became effective January 1, 1967, which provided for a deduction of social security benefits received by a disabled employee rather than disability payments in accordance with the original schedule of benefits dated September 1, 1966, which paid to a disabled employee a flat 50% of his salary without a deduction for social security benefits. The parties could not agree. Ogden then brought this action seeking to recover a judgment for the monthly disability benefits accruing from February 1969 to the time of the filing of the petition provided for under the original schedule of benefits effective September 1, 1966. Ogden also included in his petition a second cause of action for a declaratory judgment asking the court to determine under the contract the benefits to which Ogden was entitled in the future. In its answer Continental joined in the request for declaratory relief to determine the benefit payments to be made to Ogden under the policy. Ogden also prayed in his petition that he be awarded a reasonable attorney fee under K. S. A. 1969 Supp. 40-256 (now K. S. A. 1971 Supp. 40-256).

The case was tried to the court without a jury. Ogden testified in his own behalf regarding his employment by Tracor and the execution of an application by Ogden for disability income insurance under the group insurance policy with Continental. Ogden testified that about a month after completing the application form he received the certificate of insurance having an effective date of September 1, 1966, to which was attached the original schedule of benefits mentioned heretofore providing for a flat 50% of Ogden's salary. Ogden further testified that he paid each month one-half of the insurance premium and that he never received any further communication or material regarding the insurance coverage after receiving the original certificate of insurance. He categorically denied having received any notice of change in disability benefits under the group policy.

Appellee's wife Lou Anne Ogden testified that she performed the functions of secretary and bookkeeper to her husband and this included the filing and preserving of papers with regard to insurance. She opened the United States mail received at the Ogden home and examined it. She denied that appellee had received any notice of change of disability benefits from Continental by this means.

The only witness testifying for Continental was Oscar Dean Cruse, the manager of personnel administration for Tracor at the time Ogden was employed there. Mr. Cruse testified that in November or December of 1966 a change in the disability benefits was discussed by Tracor and Continental Casualty Company. In order to avoid an increase in insurance rates it was agreed that the group insurance policy should be amended to provide benefits at the same rate for all Tracor personnel and that for all employees the monthly benefits should be one-half of employee's salary less any statutory benefits including social security. Cruse testified that the master policy was amended to reduce the benefits effective January 1, 1967. After the amendment was made Continental prepared a new certificate of insurance for each employee reflecting the change in benefits and these were delivered to Tracor personnel department. A request was made by Continental that Tracor distribute the new certificates of insurance to its employees. The matter of distribution was left up to Tracor. Mr. Cruse testified that the new certificates of insurance were hand-carried to the employees of Tracor by the inter-company mail service. The new

schedule of benefits was also noted in an article discussing the Tracor insurance program published in the company's newspaper "Tracor Today". Cruse testified that the new certificates of insurance were received in his office from Continental but he was unable to say whether a certificate for each insured employee was received. No list was made by Cruse of the certificates received. Cruse did not personally distribute the certificates nor did he personally supervise the two women who distributed them. No checklist system was employed by which he could check if each person had been notified nor was any other record of distribution of the amended certificates made. In regard to the article in the company newspaper, Cruse testified that there was nothing in the article that notified employees that the disability benefits described were a change from those available at an earlier date nor was the article directed to the attention of employees for the purpose of advising them that their insurance benefits had been changed. Ogden testified that he had received no new certificate of insurance reflecting the change in benefits and stated that he did not read the article in "Tracor Today" which discussed the company's insurance program.

On the basis of the evidence presented at the trial the court found that notification to Ogden was necessary before a modification of disability benefits could be made effective as to him and that under the evidence Ogden had not received notification of the amendment to the insurance program by which the benefits were reduced. On Ogden's first cause of action the court rendered judgment against Continental as of November 19, 1969, in the amount of $6,700 with interest. On Ogden's second cause of action the court entered a declaratory judgment finding that Ogden was entitled to future benefits under the policy in accordance with the original schedule attached to the certificate of insurance dated September 1, 1966, without the modification reducing disability payments to the extent of social security payments under the endorsement to the policy dated January 1, 1967. The question of an allowance of attorney's fees to Ogden was reserved to be presented at a later date. At a subsequent hearing the trial court denied Ogden's application for an allowance of attorney's fees for the reason that Continental had acted in good faith in denying Ogden's claim under the policy. Continental filed a timely appeal with this court on the issue of the extent of its liability under the

group insurance policy. Ogden filed a timely cross-appeal from the order of the trial court denying him an allowance of attorney's fees.

The appellant Continental's first point raises the question whether modification or cancellation of a group insurance policy can be effective without notice to the employee insured thereunder where the employee contributes to the payment of the insurance premiums. The issue presented is one of first impression in Kansas. It is clear that in other jurisdictions the weight of authority holds that without reasonable notice to the contributing employee, neither the employer nor the insurance company may cancel or modify the benefits under a group insurance before liability has attached so as to deprive the employee or his beneficiary of rights under the policy. There is an extensive annotation on this subject at 68 A. L. R. 2d 249. All aspects of the problem presented in the cancellation and modification of group insurance policies are treated there, including the question of notification to the insured employee. An analysis of the cases from other jurisdictions discloses that one circumstance of the insurance arrangement which appears to have an important bearing upon the decision as to the necessity of notice is whether or not the employee contributes to the payment of insurance premiums.

The rationale of the decisions is that where the employee pays a portion of the premiums he has valuable rights in the policy and therefore notice should be given him of any modification of the contract which might effect those rights. The reason for the rule of notice is to enable him to exercise any conversion privilege available under the terms of the policy or, in the absence of such a provision, so that the insured may obtain similar insurance protection on his own account elsewhere. (*Fagan v. John Hancock Mutual Life Insurance Company*, 200 F. Supp. 142 [D. Kan. 1961]; *Butler v. Eq. Life Ins. Society*, 233 Mo. App. 94, 93 S. W. 2d 1019; *Poch v. Equit. L. Assur. Soc.*, 343 Pa. 119, 22 A. 2d 590.) We hold that the rule of the majority of the jurisdictions of which the foregoing decisions are representative is grounded on sound considerations of policy. The requirement of notice to the employee of policy modifications in no way abridges the contractual rights of the insurance company or the employer, while at the same time preventing loss to the employee as a result of the unilateral actions of others of which he is not even aware.

In its second point the appellant Continental contends that the trial court erred in its failure to find that Ogden was given proper notice of the modification made to his group insurance policy. At the trial of this case a disputed issue of fact was presented to the trial court. The trial court found under the evidence that actual notice of the modification of the group insurance policy was never given to Ogden prior to the time his disability occurred. In his testimony the appellee Odgen categorically denied any notice of the amendment to his group insurance policy reducing disability benefits. Lou Anne Ogden likewise denied receipt of such notice. Continental's only witness, Oscar Dean Cruse, testified that he had no personal knowledge that an amended certificate of insurance pertaining to Ogden was ever even delivered to Tracor by Continental; nor could he testify to his knowledge that Ogden had received any actual notice of the modification of the policy. We have no hesitancy in holding that there was substantial, competent evidence to support the finding of the trial court that appellee Ogden did not receive notice of modification of the group insurance policy prior to the date his disability occurred.

As its third point on this appeal the appellant Continental urges that since, Tracor, Inc., the employer of Ogden, had actual knowledge of the modification of the insurance policy, such knowledge must be imputed to Ogden as a matter of law. It is clear from the record in this case that the question of any agency relationship was never presented to the trial court. As pointed out heretofore the only evidence offered by appellant was the testimony of Oscar Dean Cruse, Tracor's manager of personnel administration. His testimony in no way sought to establish an agency relationship between the employer Tracor and the appellee Ogden. Nowhere in his testimony was anything said concerning the relative responsibilities of the employer and its employees in the administration of the group insurance program. The issue of agency is clearly a new theory which was first presented on appeal to this court. The rule is well established in this jurisdiction that a litigant is bound by the theory on which his case was submitted to the trial court. This court on appeal will not consider a case on a theory other than that adopted by the parties in the court below. (*Potwin State Bank v. Ward,* 183 Kan. 475, 327 P. 2d 1091.) The desirability of such a rule is apparent in the case at bar. Whether an employer is the agent of the insurance company or the agent of its employees

under a group insurance policy depends upon a variety of factors to be determined from the specific insurance policy and the relative responsibilities thereunder in each individual case. Such an issue could not responsibly be determined without the opportunity of the trial court to examine the specific group insurance policy involved. In the instant case the master policy in which these matters are presumably set out was never introduced into evidence and is not contained in the record. Here there was no evidence for the trial court to consider on the issue of agency. It made no determination one way or the other and the issue is not now before this court.

We turn now to appellee's cross-appeal. It is contended by the appellee Ogden that the trial court erred in failing to award him an allowance of attorney's fees pursuant to K. S. A. 1969 Supp. 40-256 (now K. S. A. 1971 Supp. 40-256). Under this statute attorney fees are recoverable from an insurance company when the denial of liability was made "without just cause or excuse". Generally it is a question of fact for the district court as the trier of the facts to determine whether or not an insurance company has refused to pay the full amount of an insured's loss "without just cause or excuse". (*Koch, Administratrix v. Prudential Ins. Co.,* 205 Kan. 561, 470 P. 2d 756.) In the case at bar the trial court was required to consider the testimony of Ogden and his wife and also the testimony of Oscar Dean Cruse in determining whether or not Ogden had received notice of the amendment to the group insurance policy. There was also involved a question of law of first impression in Kansas. Under the circumstances we hold that the trial court did not abuse its discretion in denying appellee attorney's fees in this case.

For the reasons set forth above we find no merit in either the appeal or cross-appeal and the judgment of the trial court is therefore affirmed.